**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JEFFREY H.,**[1] | ) | |
| | ) | **No. 20 CV 1466** |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Magistrate Judge Young B. Kim** |
| | ) | |
| **KILOLO KIJAKAZI, Acting** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | **March 23, 2022** |
| **Defendant.** | ) | |

**MEMORANDUM OPINION and ORDER**

Jeffrey H. brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying his claim for disability insurance benefits ("DIB"). Before the court is Jeffrey's motion for summary judgment. Jeffrey contends that neither the ALJ's residual functional capacity ("RFC") assessment nor subjective symptom analysis is supported by substantial evidence. For the following reasons, Jeffrey's motion is granted:

**Procedural History**

Jeffrey filed his DIB application in August 2016 alleging a disability onset date of March 14, 2012. (Administrative Record ("A.R.") 217.) After his application was denied, (id. at 108, 116), Jeffrey sought and received a hearing before an administrative law judge ("ALJ"), (id. at 123, 140, 180). A hearing took place in April 2018 at which Jeffrey and a medical expert provided testimony. (Id. at 1017-

---

[1] Pursuant to Internal Operating Procedure 22, the court uses only the first name and last initial of Plaintiff in this opinion to protect his privacy to the extent possible.

35.)   A supplemental hearing took place in November 2018 at which Jeffrey, his mother, and a vocational expert ("VE") testified.   (Id. at 37-78.)   The ALJ then issued a decision in March 2019 finding Jeffrey not disabled.   (Id. at 58-71.)   When the Appeals Council denied Jeffrey's request for review, (id. at 1-4), the ALJ's decision became the final decision of the Commissioner, *see Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019).   Jeffrey timely filed this lawsuit seeking judicial review of the Commissioner's final decision, and the parties consented to this court's jurisdiction.   *See* 28 U.S.C. § 636(c); (R. 11).

## The ALJ's Decision

The ALJ followed the required five-step process in evaluating Jeffrey's disability claim.   *See* 20 C.F.R. § 404.5120(a).   At steps one and two the ALJ found that Jeffrey had not engaged in substantial gainful activity since his alleged disability onset date and that he suffers from the following severe impairments: anxiety, depression, obesity, and degenerative disc disease of the right and left shoulder.   (A.R. 22.)   At step three the ALJ determined that Jeffrey's impairments do not meet or medically equal any listed impairment.   (Id. at 23.)   In reaching this conclusion, the ALJ focused on listing 1.02 for major dysfunction of a joint and followed the guidelines in SSR 02-1p regarding the impact of obesity on the severity or functional limitations of other impairments.   (Id.)   Finally, the ALJ considered whether Jeffrey's mental impairments satisfied either the "paragraph B" or "paragraph C" criteria for evaluating mental functioning.   (Id. at 23-24); *see also* 20 C.F.R. § 404.1520a; 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.00A(2).   The ALJ

2

concluded that Jeffrey satisfies neither but assessed limitations in the four broad areas of mental functioning measured by the paragraph B criteria. (A.R. 23-24.) The ALJ found that Jeffrey has mild limitations in understanding, remembering, or applying information and in adapting or managing oneself, but moderate limitations in interacting with others and in concentrating, persisting, or maintaining pace. (Id. at 23.)

Before turning to step four, the ALJ determined that Jeffrey has the RFC to perform "light work as defined in 20 CFR 404.1567(b)." (Id. at 24.) The ALJ included several limitations in the RFC:

> The claimant could frequently climb ramps and stairs but never ladders, rope, or scaffold. The claimant could frequently balance, stoop, kneel, crouch, and crawl. The claimant could frequently reach in all directions including overhead with both upper extremities and frequently handle, finger, and feel with both upper extremities. In addition, he could perform simple routine tasks requiring no more than short simple instructions and simple work related decision making with few [workplace] changes. He could maintain occasional contact with the general public of a brief, superficial and incidental nature and occasional interaction with supervisors and coworkers. He could work in proximity to others but with no shared or tandem tasks.

(Id.) In reaching these limits, the ALJ gave "great weight" to the medical opinions of Drs. Vidya Madala and Richard Lee Smith, state agency examiners who completed physical RFC assessments of Jeffrey. (Id. at 26-27.) The ALJ also gave great weight to the opinion of state agency psychological consultant Dr. Steven Fritz and the testimony of medical expert Dr. Michael Cremerius. (Id. at 27.) In addition, the ALJ gave some weight to Dr. Bryan Neal's independent medical examination and Dr. Douglas Evans's medical source statement. (Id.) But the ALJ

did not give any weight to Dr. William Imlach's treating source statement or Dr. Daniel Nagle's assessment. (Id.) The ALJ also evaluated Jeffrey's symptom allegations and concluded that his "statements concerning the intensity, persistence and limiting effects of [his] symptoms are less than fully persuasive to the extent they are inconsistent with the [RFC]." (Id. at 28.) Based on this RFC, the ALJ found at step four that Jeffrey is unable to perform any past relevant work, but at step five the ALJ concluded he was not disabled because he can perform a significant number of jobs in the national economy. (Id. at 28-30.)

## Analysis

Jeffrey argues that the ALJ erred in formulating the RFC because it fails to accommodate the reaching limitations included in the state agency medical opinions and given "great weight" by the ALJ. (R. 29, Pl.'s Br. at 6.) Jeffrey also contends that the ALJ erred in evaluating his subjective symptoms. In reviewing the ALJ's decision, the court asks only whether the ALJ applied the correct legal standards and whether the decision has the support of substantial evidence. *See Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Substantial evidence means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation and citations omitted). This is a deferential standard that precludes the court from reweighing the evidence or substituting its judgment for that of the ALJ's, allowing reversal "only if the record compels a contrary result." *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (quotation and citation omitted).

4

A.     **RFC Assessment**

Jeffrey argues that the ALJ's RFC assessment lacks the support of substantial evidence because the ALJ failed to include the reaching limitations Drs. Madala and Smith identified in their state agency opinions. (R. 29, Pl.'s Br. at 7.) Dr. Madala opined that Jeffrey "is limited to occasional reaching in any direction with his right arm, and frequent handling with right hand." (A.R. 87.) Dr. Smith reached the same conclusion on this limitation at the state agency reconsideration phase. (Id. at 101.) The ALJ found their opinions "appropriate" and "consistent with the treatment notes, consultative examination, physical exam, diagnostic testing, surgical intervention, and ongoing medical management and monitoring," and assigned "great weight" to them. (Id. at 27.) However, the ALJ adopted a "frequent" reaching limitation in her RFC assessment instead of the "occasional" limitation Drs. Madala and Smith recommended. (Id. at 24.) The ALJ did not explain the reason for this departure. (See generally id. at 17-36.) As such, the court agrees with Jeffrey that the ALJ's contradictory findings amount to reversible error. *See Poole v. Kijakazi*, No. 21-2641, ___ F.4th ___, 2022 WL 765845, at *3 (7th Cir. March 14, 2022) (remanding based on inconsistencies in ALJ's RFC assessment).

The RFC measures the maximum a person can do despite their limitations and must be based upon "all the relevant evidence" in the record. 20 C.F.R. § 404.1545(a)(1); *see also Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013). In assessing a claimant's RFC, the ALJ "must give substantial weight to the medical

evidence and opinions submitted, unless specific, legitimate reasons constituting good cause are shown for rejecting it." *Chambers v. Saul*, 861 Fed. Appx. 95, 101 (7th Cir. 2021) (quoting *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995)). Additionally, the ALJ may not engage in "impermissible cherry-picking" by "highlighting facts that support a finding of non-disability while ignoring evidence to the contrary." *Martin v. Saul*, 950 F.3d 369, 375 (7th Cir. 2020). However, a flawed RFC assessment will not justify remand unless the claimant can identify additional limitations not already included in the RFC. *See Pavlicek v. Saul*, 994 F.3d 777, 784 (7th Cir. 2021); *Jozefyk*, 923 F.3d at 498.

Here, the ALJ erred by failing to explain why she found Jeffrey capable of "frequently reach[ing] in all directions" despite according great weight to state agency opinions that found Jeffrey capable of only "occasional reaching." (See A.R. 24, 27.) It is not clear that the ALJ meant for her RFC to depart from the state agency opinions in this manner because the ALJ uses the same language to describe both her and Dr. Madala's assessments of Jeffrey's physical limitations despite the differences between the two. (See id. at 26 (describing Jeffrey's physical RFC as "light type work with a few manipulative and postural restrictions," and Dr. Madala's opinion that Jeffrey can perform "light exertional work with a few manipulative limitations").) Intentional or not, the ALJ rejected an important finding by Drs. Madala and Smith without explaining why. *See Chambers*, 861 Fed. Appx. at 101. In so doing, the ALJ created the appearance of impermissibly cherry-picking favorable portions of the state agency opinions by adopting their "frequent"

6

limitation on handling but departing from them in assessing Jeffrey's reaching limitations. *See Martin*, 950 F.3d at 375; (A.R. 24, 27). For this reason, the ALJ's RFC cannot stand.

This failure is not harmless. Although the difference between "occasionally" and "frequently" may seem minor from a lay perspective, the terms have specific meanings within the context of disability insurance eligibility. The Social Security Administration defines "occasionally" as "occurring from very little up to one-third of the time," while "frequent[ly]" means "occurring from one-third to two-thirds of the time." SSR 83-10, 1983 WL 31251, at *5-6. Finding that Jeffrey can only occasionally reach with his right arm therefore indicates that he is significantly more restricted than if he can frequently reach. This difference may prove dispositive because the VE testified that adding an occasional limitation on reaching with the right arm to the RFC of an individual with Jeffrey's limitations would rule out all work. (A.R. 74.) Because Jeffrey has identified an additional limitation not included in the RFC, *see Pavlicek*, 994 F.3d at 784, remand is warranted so that the ALJ may update the RFC to reflect the state agency opinions or explain why she departed from those opinions.

The government argues in response that even when an ALJ gives great weight to a state agency medical opinion, the ALJ need not adopt every aspect of that opinion. (R. 30, Def.'s Resp. at 8.) As a general statement of law, this is correct. *See, e.g.*, *Reeves v. Comm'r Soc. Sec.*, 618 Fed. Appx. 267, 275 (6th Cir. 2015) ("Even where an ALJ provides 'great weight' to an opinion, there is no

requirement that an ALJ adopt a state agency [medical consultant]'s opinions verbatim; nor is the ALJ required to adopt the state agency [medical consultant]'s limitations wholesale."). But Jeffrey's complaint here is not that the ALJ departed from Drs. Madala's and Smith's opinions after giving them great weight, but rather that she offered no explanation for doing so. Indeed, the ALJ made a point of describing the state agency opinions as being consistent with the longitudinal medical record. (See A.R. 27.) If the state agency opinions are as unimpeachable as the ALJ describes in her ruling, then why did she depart from them in crafting the RFC? The ALJ's failure to articulate her reasoning constitutes reversible error. *See, e.g.*, *Scrogham v. Colvin*, 765 F.3d 685, 696 (7th Cir. 2014).

The government tries to overcome the ALJ's error by arguing that "the ALJ reasonably found that plaintiff could frequently reach" because she discussed in detail why the medical evidence supported her RFC determination. (R. 30, Def.'s Resp. at 8.) This argument is unavailing because this court cannot uphold the ALJ's decision "on a basis not articulated in her order." *Hardy v. Berryhill*, 908 F.3d 309, 313 (7th Cir. 2018) (citing *SEC v. Chenery Corp.*, 332 U.S. 194 (1947)). It may be the case that the ALJ's examination of the medical record justifies departing from the state agency opinions and imposing a "frequent" limitation on reaching in the RFC. But the ALJ was required "to articulate the grounds clearly and rationally for her decision." *Poole*, 2022 WL 765845, at *3. The substantial evidence standard does not permit this court to infer such an explanation from her silence.

8

**B.      Subjective Symptom Assessment**

Jeffrey also challenges the ALJ's evaluation of his subjective symptoms, arguing that the ALJ failed to: (1) explain the alleged "inconsistencies" in the record; (2) consider that stability is a relative phenomenon; (3) recognize that the lack of objective evidence of worsening symptoms is not inconsistent with reports of chronic pain; (4) account for the way Jeffrey's mental impairments "exacerbated the pain from his physical impairments"; (5) credit doctors' reports that Jeffrey's subjective pain is the primary obstacle to his return to work; and (6) "acknowledge or consider [Jeffrey's] wrist impairment." (R. 29, Pl.'s Br. at 8-11.) The first five of these arguments lack merit. Only Jeffrey's sixth argument—that the ALJ failed to consider his wrist impairment—amounts to reversible error.

An ALJ's symptom evaluation is entitled to great deference because of the ALJ's ability to observe firsthand the believability of the claimant's symptom descriptions. *See Murphy v. Colvin*, 759 F.3d 811, 815 (7th Cir. 2014). As such, a reviewing court may reverse a symptom assessment only where it is "patently wrong." *Id.* at 816. The court will not disturb an ALJ's evaluation of a claimant's symptom description if it is logically based on specific findings and evidence in the record. *See id.* at 815. However, "although ALJs do not need to address every piece of evidence in the record, an ALJ may not ignore an entire line of evidence contrary to its ruling." *Grotts v. Kijakazi*, No. 21-1572, ___ F.4th ___, 2022 WL 663274, at *4 (7th Cir. March 7, 2022).

Jeffrey's first five arguments fail to show that the ALJ's subjective symptom assessment is patently wrong. First, contrary to Jeffrey's assertions, the ALJ provided detailed narratives describing the longitudinal medical evidence and explaining how that record does not support Jeffrey's allegations of "extreme functional limitations." (See A.R. 25-28; R. 30, Def.'s Resp. at 9-10.) Similarly, as to Jeffrey's second and third arguments regarding the impact of objective evidence showing stability in Jeffrey's condition, the ALJ cites such evidence to show that allegations of increasing pain are inconsistent with the objective medical record— not to deny that Jeffrey experiences chronic pain. (See A.R. 28.) Even if the ALJ erred in considering this evidence of stability, such error would not necessarily require remand because "[n]ot all of the ALJ's reasons [for discounting a claimant's symptom allegations] must be valid as long as *enough* of them are." *Halsell v. Astrue*, 357 Fed. Appx. 717, 722 (7th Cir. 2009) (emphasis in original). Here, the ALJ offered other reasons to support her symptom assessment, citing Jeffrey's testimony as to his ability to perform various tasks, his treatment records, and the medical opinion evidence. (A.R. 25-28.) In other words, any error regarding the objective stability of Jeffrey's symptoms is harmless and does not deprive the subjective symptom assessment of the support of substantial evidence.

Next, Jeffrey's fourth argument—that the ALJ failed to consider how Jeffrey's mental impairments exacerbated his pain—ignores the ALJ's detailed discussion of the mental health evidence. (Id. at 26-27.) Jeffrey argues that the ALJ failed to consider the "aggregate effect" of his physical and mental

impairments. (R. 29, Pl.'s Br. at 10 (quoting *Green v. Apfel*, 204 F.3d 780, 782 (7th Cir. 2000)).) But the ALJ's decision does aggregate his impairments into an RFC capturing the combination of his limitations—unlike in the case cited by Jeffrey, where the ALJ appears to have evaluated whether each individual limitation could support a finding of disability on its own. *See Green*, 204 F.3d at 782.

Jeffrey's fifth argument—that the ALJ ignored opinions from his physicians that his subjective pain is the primary obstacle preventing a return to work— likewise misinterprets the record. Jeffrey cites only two pages from the medical record for support—a page from Dr. Evans's treating source statement and a progress note from one of Jeffrey's visits to Dr. Joseph Holtman at the Loyola Pain Medicine Clinic. (R. 29, Pl.'s Br. at 11 (citing A.R. 579, 717).) The progress note describes Jeffrey's pain symptoms and the medications and interventions prescribed to treat them, but the note does not reflect any medical opinions. (See A.R. 717.) As to Dr. Evans's statement that "[a]t this point, [Jeffrey's] work restrictions would be limited only by his pain," (id. at 579), the ALJ explicitly confronted that opinion, (see id. at 27 ("[Dr. Evans] noted that the claimant had no mechanical issues but was limited due to pain symptoms from his impairments").) And the ALJ gave Dr. Evans's opinion "some weight," crediting the finding that Jeffrey could lift no more than 30 pounds while discounting the opinion that Jeffrey could not lift overhead as "not supported by the doctor's own objective findings." (Id.) As a result, Jeffrey's fifth argument offers no basis for remand.

In summary, these five arguments essentially ask the court to reweigh the evidence. Jeffrey would have this court reinterpret the record and give more weight to his subjective pain symptoms and less to the objective medical evidence. But this court cannot reweigh the evidence presented to the ALJ. *See Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008) ("[W]e are not free to replace the ALJ's estimate of the medical evidence with our own."). That Jeffrey would weigh the evidence differently than the ALJ does not make the ALJ's assessment patently wrong.

However, the sixth argument has traction. Jeffrey injured his right wrist at work in March 2012, aggravating a pre-existing condition diagnosed as "scapholunate advanced collapse." (R. 29, Pl.'s Br. at 2 (citing A.R. 546, 558).) As a result, Dr. Michael Bednar performed surgery on Jeffrey's wrist in February 2013. (A.R. 370-71.) Jeffrey's treatment records thereafter consistently note pain of varying degrees in his right wrist. (See id. at 389-90, 393, 469, 479, 496, 500, 561, 565, 573, 613-14, 636, 648, 674, 687, 717, 761, 775, 820, 834, 847, 866, 875, 890, 924, 978, 1000.) Despite this record of consistent complaints of wrist pain, the ALJ's decision makes no mention of his wrist injury, diagnosis, surgery, or subsequent pain. (See id. at 20-30.) Consequently, the ALJ erred by failing to grapple with an entire line of evidence that may be favorable to Jeffrey. *Grotts*, 2022 WL 663274, at *4. Furthermore, it is axiomatic that "[w]hen determining a claimant's [RFC], the ALJ must consider in combination all limitations on the claimant's ability to work, including those that are not individually severe." *Krug v. Saul*, 846 Fed. Appx. 403, 406 (7th Cir. 2021). "A failure to fully consider the impact of non-severe

12

impairments requires reversal." *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010). The ALJ here never evaluated the severity of Jeffrey's wrist impairment, much less considered the impact of that impairment on Jeffrey's limitations. As such, the ALJ's assessment lacks the support of substantial evidence.

The government acknowledges this error but says it is harmless. (R. 30, Def.'s Resp. at 8-9.) The government says the ALJ properly accounted for this wrist impairment by noting that Jeffrey alleged "pain symptoms in the bilateral upper extremity on a regular basis" and therefore included in the RFC a limitation for "frequent handling, fingering, and feeling." (Id. at 8.) The government also notes that this limitation "is consistent with the opinion of the medical consultants, who concluded that [Jeffrey] could frequently handle with the right hand." (Id.) On this basis, the government contends that the ALJ nullified any error she made in failing to identify Jeffrey's wrist impairment at step two by including this impairment in her RFC and symptom assessments. (Id. at 9 (citing *Curvin v. Colvin*, 778 F.3d 645, 649 (7th Cir. 2015); *Castile v. Astrue*, 617 F.3d 923, 927 (7th Cir. 2010)).)

But the ALJ clearly states that she based her assessment of Jeffrey's physical limitations only on his shoulder pain and obesity. (See A.R. 26 ("[T]he claimant's medical evidence of record, subjective complaints, and activities of daily living warranted limitations to light type work with a few manipulative and postural restrictions due to ongoing physical pain complaints in the shoulders along with obesity.").) The court cannot infer meaning into the ALJ's decision that the ALJ herself has not given it. *See Hardy*, 908 F.3d at 313. Furthermore, the cases on

which the government relies deal with circumstances in which the ALJ erred in assessing the degree of an impairment—not, as here, where the ALJ missed an impairment altogether. *See Curvin*, 778 F.3d at 649; *Castile*, 617 F.3d at 927. Failure to engage with an entire line of evidence is its own independent source of error. *See Grotts*, 2022 WL 663274, at *4; *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (ALJs have "a basic obligation to develop a full and fair record" and "remand may be required . . . if the ALJ based the decision on serious factual mistakes or omissions."). And even if the ALJ's RFC includes handling limitations matching those present in the medical opinion evidence, this court cannot conclude with great certainty that the RFC would not change on remand. Remand is warranted so that the ALJ may account for Jeffrey's wrist impairment as she deems appropriate.

## Conclusion

For the foregoing reasons, Jeffrey's motion for summary judgment is granted, and the case is remanded for further proceedings consistent with this opinion.

ENTER:

Young B. Kim
**United States Magistrate Judge**

14